# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
April 24, 2012 Session

## QUINCY LONDALE SCOTT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 274685      Don W. Poole, Judge**

---

**No. E2011-01534-CCA-MR3-PC - Filed September 24, 2012**

---

The Petitioner, Quincy Londale Scott, appeals as of right from the Hamilton County Criminal Court's denial of his petition for post-conviction relief. On appeal, the Petitioner contends that his trial counsel was ineffective for failing to investigate the circumstances surrounding his confession to the police and failing to hire a "handwriting expert" to testify about the waiver of rights form signed by the Petitioner. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

David Christopher Veazey, Chattanooga, Tennessee (on appeal); and Justin G. Woodward, Chattanooga, Tennessee (at hearing and on appeal), for the appellant, Quincy Londale Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; William H. Cox, III, District Attorney General; Neal Pinkston and Lance Pope, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

In 2003, the Petitioner was charged in two separate indictments with one count of first degree felony murder, one count of especially aggravated robbery, two counts of aggravated robbery, and one count of carjacking. Following a jury trial, the Petitioner was convicted of one count of facilitation of first degree murder, one count of attempted especially aggravated robbery, two counts of aggravated robbery, and one count of carjacking. The Petitioner

received an effective sentence of thirty-seven years. This court affirmed the Petitioner's convictions on direct appeal. State v. Quincy Londale Scott, No. E2007-00393-CCA-R3-CD, 2009 WL 276778 (Tenn. Crim. App. Feb. 4, 2009), perm. app. denied, (Tenn. June 15, 2009).

The Petitioner's convictions arose from a late night crime spree by the Petitioner and two co-defendants on July 30 and 31, 2002. During the crime spree, the Petitioner was armed with a shotgun and one of his co-defendants was armed with an assault rifle. The men committed three separate robberies and stole a car. During one of the robberies, the co-defendant armed with the assault rifle shot and killed a victim. All three defendants were eventually questioned by the police. The Petitioner was questioned twice: on August 7, 2002 and August 14, 2002. Before the questioning on August 7, 2002, the Petitioner signed a waiver of his Miranda rights. The Petitioner did not admit any involvement in the crimes or make any incriminating statements during his first interview with the police. The Petitioner was interviewed again on August 14, 2002, and during this interview, the Petitioner admitted his involvement in the crimes but denied shooting the victim. The Petitioner's statements were presented as evidence at his trial along with testimony from the victims, eyewitnesses who saw the Petitioner with weapons matching the description of those used both before and after the crime spree, and other evidence. See Scott, 2009 WL 276778, at *1-5.

Prior to trial, the Petitioner filed a motion to suppress his August 14, 2002 statement to the police. The Petitioner claimed that he had not signed a waiver of his Miranda rights before the interview. Instead, the Petitioner argued that both waiver forms reflected the date of the first interview on August 7, 2002, and that he had signed the second waiver form on August 7, 2002, "after he was told that the first waiver form had been lost." The Petitioner also claimed that he had taken "pills" that were given to him by his cellmate prior to the August 14, 2002 interview. The Petitioner claimed that he was only "halfway there" during the interview and "barely" remembered what had happened during the interview. The Petitioner further claimed that he asked for an attorney prior to the August 14, 2002 interview. The trial court denied the Petitioner's motion to suppress his statement, and this court affirmed that decision on direct appeal. Scott, 2009 WL 276778, at *4-6.

On January 19, 2010, the Petitioner filed a timely, pro se petition for post-conviction relief. The petitioner alleged that trial counsel "was deficient in regard to the investigation of the Miranda waiver forms." The Petitioner argued that it could "clearly [be] seen that the date of one of the forms had been altered to reflect the date of the alleged signing." The Petitioner noted that on the top of the form the date was stated as August 14, 2002, and appeared to have "been altered," but on the bottom of the form the date was stated as August 7, 2002. The Petitioner argued that his statement to the police was the only evidence

connecting him to the crimes. The Petitioner acknowledged that his trial counsel had filed a motion to suppress his statement, but he argued that trial counsel had not "properly argued this issue at the trial court level." The post-conviction court appointed counsel and an amended petition was filed on April 15, 2010. The amended petition essentially restated the arguments made by the Petitioner in his pro se petition. The post-conviction court held a hearing on this matter on March 7, 2011.

At the hearing, trial counsel testified he had been licensed to practice law since 1992 and had tried between fifty and seventy-five criminal cases. Trial counsel recalled filing a motion to suppress the Petitioner's statement "because it was taken when he was under the influence of . . . prescription medication." Trial counsel testified that he was "not sure" if the Petitioner had ever provided him with the name of the person who gave the Petitioner the pills. Trial counsel stated that he did not go through the jail records in an effort to find out who this person was. Trial counsel testified that he had "quite a few" discussions with the Petitioner about the Miranda waivers. Trial counsel recalled that "there were significant issues concerning the timing of the Miranda waiver." Trial counsel then testified that the issue of whether the date had been altered on the August 14, 2002 waiver had been included in his motion to suppress the statement, "addressed actually within the context of the suppression hearing," and litigated prior to trial.

Trial counsel testified that he "discussed a number of things about [the Miranda waiver] in detail" with the Petitioner. Trial counsel could not remember if he had "specifically discussed hiring a handwriting expert" with the Petitioner. Trial counsel believed that the Petitioner "explained" to him why the date on the waiver appeared to be altered and "that explanation precluded the need" for a handwriting expert. However, trial counsel could not recall for certain whether or not this was actually the case. Trial counsel then testified that the August 14, 2002 statement was "crucial" to both the State and the defense. Trial counsel explained that the statement went "right along with the theory of defense in the case" that the Petitioner "was not actually involved in the shootings." Trial counsel believed that the statement was "how [they] got the jury to the point of facilitation" and to acquit of the charged offense of first degree felony murder. Trial counsel concluded that he was "very pleased with the result" at trial.

The Petitioner testified that he did not recall signing a Miranda waiver on August 14, 2002. The Petitioner testified that he recalled meeting with trial counsel to discuss the issue of the waiver but that trial counsel had never discussed with him "the need or the ability to hire a handwriting expert or any type of forensic expert." According to the Petitioner, the only thing trial counsel did with respect to the alleged alteration of the date on the waiver form was that trial counsel "brought in the original copy and he was, like, well, that's it right there or something and just let it go." The Petitioner testified that trial counsel discussed

with him the reasons why trial counsel had filed a motion to suppress. The Petitioner stated that trial counsel wanted his statement suppressed because it was "something that was real valuable" and that the State could use it to convict him. The Petitioner did not present any expert witnesses or other evidence regarding the Miranda waiver at the hearing.

On cross-examination, the Petitioner testified that he had taken "some random pills" that he got from another inmate just before he gave his August 14, 2002 statement. The Petitioner admitted that it was "possible" that he signed a second Miranda waiver form on that day and just did not "remember it" because of the medication he had taken. Also on cross-examination, the Petitioner admitted that he was "satisfied with the decision" of the jury but he felt his trial counsel only "put some effort in" to his trial. The Petitioner also admitted that before the suppression hearing trial counsel discussed with him the particular arguments and tactics he would use at the hearing. However, the Petitioner testified that trial counsel did not discuss with him calling any witnesses at the suppression hearing or consulting any experts for the hearing.

On April 5, 2011, the post-conviction court issued an order denying the Petitioner post-conviction relief.[1] The post-conviction court stated that the Petitioner did not present any "expert evidence that his second waiver is a forgery or additional evidence that, because of his use of medication, the waiver or the subsequent statement was involuntary or unintelligent" at the hearing. The post-conviction court concluded that "any deficiency in [trial] counsel's performance in this respect was not prejudicial." The Petitioner subsequently filed a request for an untimely appeal which this court granted.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying his petition for post-conviction relief. The Petitioner argues that trial counsel failed to properly investigate the circumstances surrounding the August 14, 2002 Miranda waiver. The Petitioner also argues that trial counsel was ineffective for failing to consult with or have a handwriting expert testify at the suppression hearing. The Petitioner further argues that a handwriting expert should have been consulted because his statement was "instrumental" to the State's case against him. The State responds that it is clear from the record that trial counsel fully investigated the circumstances surrounding the Petitioner's Miranda waiver. The State also responds that the Petitioner, by failing to call a handwriting expert at the post-conviction hearing, cannot establish that trial counsel was ineffective.

---

[1]Both the pro se petition and the amended petition raised several other issues. The post-conviction court ultimately denied post-conviction relief on these issues as well. However, the Petitioner has not raised these issues in this appeal.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The record in this case simply belies the Petitioner's contention that trial counsel failed to properly investigate the circumstances surrounding the August 14, 2002 Miranda waiver. Trial counsel discussed the issue of the alleged discrepancy in the form's date with the Petitioner and included the issue in his motion to suppress the statement. The Petitioner testified about the issue at the suppression hearing and both the trial court and this court addressed the issue. The Petitioner admitted at the post-conviction hearing that trial counsel had discussed the issue with him prior to the suppression hearing. The Petitioner also admitted that it was possible he signed a Miranda waiver on August 14, 2002, and could not recall it due to the fact that he had taken "pills" before the interview. Further, the Petitioner presented no proof at the post-conviction hearing to establish what, if anything, further investigation by trial counsel would have revealed. Therefore, the Petitioner failed to establish that trial counsel was deficient in his investigation regarding the Miranda waiver.

With respect to the Petitioner's claim that trial counsel was ineffective because he did not consult with or call a handwriting expert at the suppression hearing, this court has long held that when a petitioner contends that trial counsel failed to call a known witness in support of the defense, the witness "should be presented by the petitioner at the evidentiary

hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way the petitioner can establish that failure "to call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. The Petitioner failed to present a handwriting expert at the post-conviction hearing; therefore, the Petitioner has failed to establish by clear and convincing evidence that trial counsel was ineffective regarding this issue.

At oral argument in this case, the Petitioner argued that he should not be faulted for failing to present a handwriting expert because there is no funding provided for an indigent petitioner to secure such an expert for post-conviction proceedings. However, after "careful consideration of the cases and constitutional provisions" our supreme court has held that "the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995). Accordingly, we affirm the judgment of the post-conviction court.

<u>CONCLUSION</u>

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE